ABRAHAM MERRITT and another *vs.* HENRY W. BUCKNAM.

Washington. Opinion April 8, 1885.

*Will. Devise. Perpetuities.*

A devise was as follows: "I give and bequeath unto Hiram Coffin, his heirs, &c. the remainder of my homestead farm, . . upon conditions as follows, viz: That he pay annually the sum of fifty dollars to the M. E. church in Columbia village, for the support of preaching, or if the said Hiram choose to pay the principal of which the above sum is the interest, all at one time, or in payments within,— then my executors hereinafter named, shall give a good and sufficient deed to the said Hiram Coffin, his heirs, &c. which shall be as good and binding as if given by me, . . . But if said Hiram or his heirs fail in any way to perform the conditions above named, then I give and bequeath the farm before named to the said M. E. church. *Held:*

1. That as the contingency upon which the devise to the church was to vest, might not happen within a life in being and twenty-one years, the devise was void, as offending the rule against perpetuities.

2. That the option given the first taker to extinguish the condition and perfect his own title, did not remove the uncertainty of the time of the vesting of the devise over, and hence did not take the devise out of the rule.

3. That the first taker was not made a trustee for the second contingent devisee, but held in fee subject to the conditions.

4. That whatever rights the demandants representing the church have in equity, they have not the legal title accompanied by a present right of entry.

ON REPORT.

Writ of entry dated December 15, 1882, to recover possession of certain land in Columbia Falls.

The plaintiffs are trustees under the will of Louisa J. Bucknam, and claim title to the *locus* under the fifth paragraph of the will, which reads as follows: "Fifth. I give and bequeath unto Hiram Coffin, his heirs, &c., the remainder of my homestead farm, all my right, title and interest in the same, upon conditions as follows, viz. : That he pay, annually, the sum of fifty dollars

to the Methodist E. church, in Columbia village, for the support of preaching the gospel, or, if the said Hiram choose to pay the principal of which the above sum is the interest, all at one time, or in payments within —— ——, then my executors hereinafter named shall give a good and sufficient deed to the said Hiram Coffin, his heirs, &c., which shall be as good and binding as if given by me, and the principal, if paid by the said Hiram, shall be placed in the hands of trustees hereinafter named, who shall put the same at interest as a fund forever, and the interest accruing from the same shall be expended for the support of preaching the gospel in the village of Columbia, as before requested. But if the said Hiram, or his heirs, fail in any way to perform the conditions above named, then I give and bequeath the farm before named to the M. E. church, in Columbia village, to go into the hands of trustees hereinafter named, and their successors, who are to dispose of the same, and put the proceeds at interest as a fund forever, and the interest of said fund, only, shall be expended for the support of the gospel, as before named. ”

The will was probated in November, 1853, and Hiram Coffin, the devisee named, went into possession, and occupied and paid the fifty dollars annually, in accordance with the terms of the will, until October 4, 1880, when he sold and conveyed the premises to the defendant, who has occupied the same since that time, without paying the fifty dollars annually, and he claims to hold the title free from conditions and restrictions.

*Davis and Bailey*, for the plaintiffs.

On failure of Coffin to perform the conditions, the title would vest in the trustees named or their successors, and not in the church or its officers as a distinct body. *Stanly* v. *Colt*, 5 Wall. 119 ; *Blake* v. *Dexter*, 12 Cush. 559 ; *Braman* v. *Stiles*, 2 Pick. 460 ; *Brewster* v. *Striker*, 2 Comst. 19.

Does this devise create a perpetuity obnoxious to the law? A perpetuity has been variously defined. The following are some of the definitions given in the books :

“ An estate inalienable, though all mankind should join in the conveyance. ” *Scatterwood* v. *Edge*, 1 Salk. 229.

" A limitation which is not destructible by the persons for the time being entitled to the property, except with the concurrence of the individual interested under that limitation." Lewis on Perp. 164.

" A future limitation restraining the owner of the estate from alienating the fee simple of the property discharged of said future use or estate, before the event is determined or the period is arrived when such future use or estate is to arise. If that period is within the bound prescribed by law, it is not a perpetuity." Saunders on Uses and Trusts, 204.

" If any case the limitation be in such a manner that all who have an interest by joining in the conveyance, can not pass or bar their interest, it will be a perpetuity." Com. Dig. Chan. 4 G. 3.

From these definitions, the inference is irresistible that whenever it is in the power of the holder of the estate, either by himself alone or conjointly with others interested therein, to convey the entire estate, it involves no perpetuity. Turning now to the case at bar, and for the time being leaving out of consideration the charitable character of the church as a beneficiary, and we make from the facts presented, the following deductions :

1.   The devise to Coffin and his heirs, is upon a condition with an alternative, which he could perform at his option.

2.   The church took a vested interest in the estate at the death of the testatrix, capable of being released, which with Coffin's interest, constituted the entire estate, both legal and equitable.

That both of these are inconsistent with a perpetuity, would seem to be hardly debatable.

In *Brattle Square Church* v. *Grant*, 3 Gray, 142, a perpetuity was declared to exist, and it is stated by BIGELOW, J., on page 153, to be a leading consideration in the result there reached, that the event upon which the prior estate was to determine, " is not dependent upon any act or omission of the devisees over which they might exercise a control." From which, it may be fairly inferred, that no such result is possible where the converse

of that statement is true, as it certainly is in the case under consideration. Here an estate is devised upon a condition, with an alternative possible for the devisee to perform. How, except by his "omission" to perform it, is a semblance of a perpetuity possible?

He has the option ( in effect ) to pay eight hundred and thirty-three dollars and thirty-three cents to the Methodist Episcopal church, and thereby make an absolute title in himself, or, if he prefers, to pay the interest of that sum at six per cent. annually. Can he seriously say that the limitation of his estate is beyond his control, and that he is perpetually bound to the annual payment? The reasons for the rule against perpetuities as stated by BIGELOW, J., in the case last cited, 3 Gray, 156, "when a party has granted or devised an estate, he shall not be allowed to fetter or defeat it by annexing thereto impossible, illegal, or repugnant conditions or limitations," would require modification if the grantee or devisee had any hand in clogging the estate so granted or devised. See *Caulfield* v. *Sullivan*, 85 N. Y. 159; *Glen* v. *Fisher*, 6 Johns. Ch. 33; *Blake* v. *Bunbury*, 1 Ves. Jr. 523.

Whichever way we look at this devise—whether we regard the gift to the church with an alternative aspect, or simply as a gift of an annual sum of fifty dollars, it presents the common case of a legacy chargeable on the estate devised. *Merrill* v. *Bickford*, 65 Maine, 118; *Bugbee* v. *Sargent*, 23 Maine, 269; *Perry* v. *Hale*, 44 N. H. 363.

An annuity is but a legacy, both being universally treated on the same footing. Hill on Trustees, * 362; *Stokes* v. *Heron*, 12 Cl. & F. 161; *Hedges* v. *Harper*, 3 DeG. & J. 131; *Potter* v. *Baker*, 2 Eng. L. & Eq. 92; *Bent* v. *Cullen*, L. R. 6 Ch. App. 238; *Watson* v. *Hayes*, 5 My. & Cr. 125, 133; *Fox* v. *Fox*, L. R. 19 Eq. Cas. 286; *Hellman* v. *Hellman*, 4 Rawle, 440; *Birdsall* v. *Hewlett*, 1 Paige, 32; 2 Jarman on Wills, 5 Am. Ed. * 834; *Loder* v. *Hatfield*, 71 N. Y. 92, 99; *Fuller* v. *Winthrop*, 3 Allen, 51; *Veazey* v. *Whitehouse*, 10 N. H. 409; Perry on Trusts, § 576; *Stanly* v. *Colt*, 5 Wall. 119; *Wright* v. *Wilkins*, 2 B. & S. 232; *Kirk* v. *Kirk*, L. R. 21

Ch. Div. 437; *Bugbee* v. *Sargent*, 23 Maine, 269; *Sands* v. *Champlin*, 1 Story, 376; Perry on Trusts, § § 121, 568; *Fosdick* v. *Fosdick*, 6 Allen, 43.

But the paramount consideration in this case, and that which most effectually disposes of this question of a perpetuity, is the charitable nature of the beneficiary. Perry on Trusts, § 737; *Piper* v. *Moulton*, 72 Maine, 155; *Mills* v. *Farmer*, 1 Mer. 99; *Attorney Gen.* v. *Price*, 17 Ves. 371; *Gillam* v. *Taylor*, L. R. 16 Eq. Cas. 581.

In *Odell* v. *Odell*, 10 Allen, 6, the reason why a remote gift over to a charity after an individual taker is invalid, is said to be " not because the charity could not take at the remote period, but because it tends to create a perpetuity in the first taker." But here the first taker is exempted from the rule, charity being of the substance of his estate. *Christ's Hosp.* v. *Grainger*, 16 Sim. 83; S. C. 1 Mac. & G. 459; *Atty. Gen.* v. *Wax Chandlers' Co.* L. R. 8 Eq. Cas. 452, affirmed L. R. 5 Ch. App. 503; *Merchant Taylors' Co.* v. *Atty. Gen.* L. R. 11 Eq. 35, affirmed L. R. 6 Ch. App. 512; 2 Bl. Com. 155; *Brown* v. *Higgs*, 8 Ves. 574; *Lloyd* v. *Branton*, 3 Mer. 117; *Hollinrake* v. *Lister*, 1 Russ. 568; *Waite* v. *Delesdernier*, 15 Maine, 146; *Pickering* v. *Pickering*, 6 N. H. 120; *Harris* v. *Fly*, 7 Paige, 421; *Bugbee* v. *Sargent*, 23 Maine, 269; *Perry* v. *Hale*, 44 N. H. 363; *Scott* v. *Patchin*, 54 Vt. 253.

*Charles A. Bucknam*, for the defendant, cited: *Stearns* v. *Godfrey*, 16 Maine, 158; *Brattle Sq. Church* v. *Grant*, 3 Gray, 142; 2 Greenl. Cruise, * 238; *Taft* v. *Morse*, 4 Met. 523; *Gardner* v. *Gardner*, 3 Mason, 215; *Bailey* v. *Elkins*, 7 Ves. 323; *Bryant* v. *Erskine*, 55 Maine, 153; *Smith* v. *Durell*, 16 N. H. 346; *Fosdick* v. *Fosdick*, 6 Allen, 41; *Sears* v. *Putnam*, 102 Mass. 5; *Sears* v. *Putnam*, 8 Gray, 86; *Donohue* v. *McNichol*, 61 Pa. St. 73; *Miles* v. *Fisher*, 10 Ohio, 1; *Wells* v. *Heath*, 10 Gray, 25; *Welsh* v. *Foster*, 12 Mass. 97; *Jocelyn* v. *Nott*, 44 Conn. 54; *Jackson* v. *Phillips*, 14 Allen, 572; *Pewterere* v. *Christ's Hospital*, 1 Vern. 161; *Slade* v. *Patten*,

68 Maine, 380; *Fiske* v. *Keene*, 35 Maine, 350; *Webster* v. *Hill*, 38 Maine, 78; *Thayer* v. *McClellan*, 23 Maine, 417; *Hunter* v. *Heath*, 67 Maine, 507; *Derby* v. *Jones*, 27 Maine, 357; R. S., c. 73, § 14.

EMERY, J.   Whatever may be the equitable interests of the demandants in the demanded land, or whatever interest or title they might acquire therein, through appropriate equity proceedings, they can not recover judgment in this real action, unless at the date of their writ, December 15, 1882, they had then vested in themselves, the legal title, and immediate right of possession.

Their only claim of title is under the fifth clause of the will of Louise J. Bucknam, which is stated in full in report of the case. The demandants are the trustees referred to in said clause.   The tenant claiming under said Coffin, had ceased to pay said annual sum of fifty dollars, and the alternative condition named in the will has not been performed.

It may be admitted that the legal title the testatrix intended to confer on the demandants, on the happening of the contingency, is a fee.   It is equally clear we think, that whatever equitable rights the testatrix intended to confer on the demandants, she did not intend them to take any legal title until the contingency happened.   She first devised the land "to Hiram Coffin, his heirs," etc., upon conditions.   "But if," ( to quote from the will, ) "the said Hiram, or his heirs, fail in any way to perform the conditions above named, *then* I give and bequeath the farm to the M. E. church," etc.   The devise to "Hiram Coffin, his heirs," etc., was, in effect, a fee, though charged with certain burdens and conditions.

The devise over was of the fee, but clearly the devise over of the legal title to the land itself, was not to be, unless and until the failure of the first devisee, or his heirs, to perform the conditions.   Whatever equitable interest the second devisees might have in the land, whatever rights they might have against it, to enforce the payment of the annuity, their legal title, their fee could not be in existence until the time when there should be a failure to perform the conditions.

That date was wholly uncertain. It might have been immediately after the death of the testatrix. It might not have been until long after the lapse of a life time and twenty-one years. Such a devise is an executory devise, and to be valid, it must take effect, the fee must vest, the contingency occur, within a life in being and twenty-one years, reckoning from the death of the testator. The contingency *must* happen. It must be such that it will *necessarily* happen within the time of a life in being and twenty-one years. If the contingency be such that possibly it may not happen within the prescribed time, the devise over is void.

This is the old, well known, inflexible rule, established long ago in the common law, to guard against perpetuities. Whatever may be the intention of a testator, no effect can be given to it, if it violate that rule. It may seem an arbitrary rule, but it is a wise rule, and one that must be enforced. A full and clear exposition of this whole subject of the nature of executory devises, the scope of the rule against perpetuities and its effect on executory devises may be found in *Brattle Square Church* v. *Grant*, 3 Gray, 142 ; *Fosdick* v. *Fosdick*, 6 Allen, 41 ; *Odell* v. *Odell*, 10 Allen, 1.

The authorities are there fully and correctly cited, and we refer to those cases, rather than consume space by quoting from them, or other authorities, see also the late case, *Theological Education Soc.* v. *The Attorney General*, 135 Mass. 285, also, *Slade* v. *Patten*, 68 Maine, 380. The devise over in this case, under which the demandant claims depends upon a contingency which might not happen until after the period prescribed by law. The conditions might not have been performed until after such lapse. The devise therefore, offends against the rule, and cannot be sustained. The testatrix's attempt to create an estate in the demandants in that contingency failed, as not being permitted by law, and the demandants, whatever other rights they may have, did not acquire under the will the legal estate necessary to entitle them to judgment in this action.

The demandants' counsel claim that there are some matters, or provisions connected with the devise of the farm, which will

uphold the devise to the demandants, as not offending against the rule above named. They say that the devise to Coffin and his heirs, is upon a condition with an alternative, which he could perform at his option. The alternative was the right to free himself from the condition by paying a gross sum at once. The argument is, that he could make an absolute title in himself, free from any condition, by paying a gross sum, that the limitation of the estate is within his control, that he should be held to sustain all the devises, and should not be allowed to defeat the devise over, and thereby enlarge his own estate by neglecting to either perform, or commute the condition.

We have no occasion to consider the estate rights, or duties of Coffin, or of those claiming under him. Whatever duties they may owe in relation to this land, can perhaps be enforced against them, or the land by proper proceedings. This case stands or falls on the legal title of the demandants under the will. The time of the vesting that title has been shown to be too uncertain, and possibly too remote. The addition of the alternative to the condition does not remove the uncertainty, nor abridge the possible remoteness of the time. The contingency of the failure to perform both alternatives might not happen until after the lapse of the time prescribed by law. Whatever may be the rights or duties of the first taker, the inflexible rule of law will not recognize any estate attempted to be vested in a second taker so long as there is any chance that it may not vest until after the prescribed time. The ingenuity of the able counsel has not removed that chance from their clients claim.

Again it is contended, that the church took at the death of the testatrix a present vested interest of some kind, capable of being released, and that a conveyance by the church and by Coffin would convey the whole estate, free from condition thus removing the objection of a perpetuity.

But the church took no legal estate in the land. It was not entitled to all the rents, or income. It only took a right to a specified sum as an annuity. It could in no way interfere with the land, its title or possession by its own act. It could not

maintain any process in relation to it, so long as the annuity was paid. The annuity could not be assigned by the church, and Coffin need not have paid it to any one else but the church. The testatrix's bounty was intended for the support of the preaching of the gospel, presumably in that church. That bounty could not be diverted. If that church would not administer it, trustees would be appointed by the court, that the benevolent intent of the testatrix might not fail. The cases cited by the demandants' counsel appear to be cases where it was sought to reach the land by process in equity, to charge it with the payment of a legacy, or annuity.

The cases cited may declare that such a legatee has a vested interest in the payment of the annuity, but we think none of them go farther, than to declare a lien on the land for such payment, enforceable in equity. We find no case in which it is declared that such a legatee has a legal estate in the land, independent of a court of equity. We do not need to discuss further, the interest of the church, nor the estate of Coffin, or the tenant under him. Whatever the testatrix may have intended to give Coffin, or give the church, she gave a fee, a legal estate to the church trustees only upon a contingency uncertain as to time. No view of the church's interest that has been presented, removes that uncertainty.

The main reliance of the demandants however, is upon the charitable nature of the devise to them. They claim that the rule against perpetuities does not apply to such devises, and that this devise being to a charity, is valid notwithstanding. It may be admitted that the devise over is to a charity, and that a devise to a charity may lawfully be made perpetual.

Indeed, charities are of lasting benefit to humanity, and their perpetuity is desirable, and intentions of donors to make their gifts perpetual are readily inferred, and upheld. *Odell* v. *Odell*, 10 Allen, 6, and cases cited. But it is not the perpetuity of the estate intended to be given to the church trustees, that breaks against the rule. It is the possible perpetuity of the estate given the first taker, the possibility that the estate given to the charity may not begin in time. It is well settled

that if a gift is made in the first instance to an individual, and then over to a charity upon a contingency which may not happen within the prescribed limit, the gift to the charity is void. Perry on Trusts, § 736, (1st ed.) and cases there cited. *Odell* v. *Odell*, 10 Allen, 7; *Brattle Square Church* v. *Grant*, 3 Gray, 154. The cases of *Commissioners of Charitable Donations* v. *De Clifford*, 1 Dru. & War. 240, 253, seems to be a leading case on this point. There, the testator devised lands, to trustees. He directed that the yearly rents, to a certain amount be appropriated to certain charities. He then provided that, if an increase of rents was obtained, the surplus over the amount first appropriated, should go to such persons of certain families, as should be lords of Down Patrick manor. He further provided that in case said families became extinct, or did not protect the charities established by the will, then the surplus rents should go to the first charities to whom the first rent was given. It was held that the gift over of the surplus rent, although to a charity, was too remote, as the contingency upon which it was to take effect was not restricted within proper limits. This case is quoted with approval in the *Brattle Square Church* case and in *Odell* v. *Odell*, *supra*, and seems analogous to the present case.

The demandants' counsel cites *Christ's Hospital* v. *Grainger*, 16 Sim. 83, (S. C. on appeal, 1 Mac. & G. 459) where property was given to one charity, to go over to another on a certain event, and was allowed to vest in the second charity, after two hundred years. The devise of the legal estate was to charities in each instance, and could properly have been perpetual in either. There was no more perpetuity in both charities than in one. The takers of the legal estate were simple trustees. The Lord Chancellor on appeal said in effect that the substance of the provision in the will, was a substitution of one trust for another, rather than a forfeiture of one estate, and creation of another. In the case at bar, Coffin, the first taker, was not a trustee. He did not hold the land for the church, but for himself, it being charged with a fixed annuity. The case cited does not apply.

The demandants also quote from the language of the Master of

Rolls, and the Lord Chancellor, in the *Wax Chandlers' Co.* case, L. R. 8 Eq. Cas. 452 ; S. C. on appeal, L. R. 5 Ch. App. 503, and the *Merchant Taylors' Co.* case, L. R. 11 Eq. 35 ; S. C. on appeal, L. R. 6 Ch. App. 512. But in both those cases, the first takers were held to be trustees to a certain extent, for a charity, and the process was by the attorney general to direct the application of the income. The devisees under the devises over, were not parties, and made no claim. The validity of the devise over was not a question, and could not have been a question. We do not think those cases are compelling authorities in support of the demandants' proposition.

We do not undertake to pass upon the legal rights or estate of the tenant, or to say whether he has any estate. We do not mean to conclude any rights of the church, or its trustees to the annuity or any of its equitable rights in the land. We only decide that so far as now appears, the legal estate, which demandants say was devised to them, does not exist for the reason that the contingency fixed for its beginning was not fixed within the legal limits.

*Demandants nonsuit.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.