[Civ. No. 112.    Fifth Dist.    Aug. 3, 1962.]

Estate of JOSEPH FRANK HOLTERMANN, Deceased. RITA MARIE NEWMAN, Claimant and Appellant, v. ROMAN CATHOLIC BISHOP et al., Objectors and Respondents.

Baker, Palmer, Wall & Raymond and Oran W. Palmer for Claimant and Appellant.

Andrews & Andrews, James F. Thaxter and G. A. Drescher for Objectors and Respondents.

BROWN, J.—Appellant is the sole surviving daughter of decedent, who died at the age of 72 years on October 23, 1959.

The decedent executed a will on February 19, 1959, which was more than six months prior to his death, in which he left to the pastor of St. John's Roman Catholic Church at Wasco, $25 for masses for his soul, $50 for masses for the decedent and his family, $25 for masses for the Henry Holtermann, Sr., family, $25 for masses for another family, and $25 for masses for all poor souls. He left all of his furniture and household goods to appellant, and one-half of the residue to The Roman Catholic Bishop of Monterey-Fresno, a corporation sole, and the other half of the residue to the St. John's Council No. 2938 Knights of Columbus in Wasco, an unincorporated association.

After the petition for probate was filed on November 20, 1959, the appellant filed a contest to the will alleging that the decedent did not sign the instrument in the presence of the witnesses; that he did not acknowledge to said witnesses that the signature was his or that it was his last will and testament; that on the date the will was made the decedent was not competent to make a will, was of unsound mind and was not of disposing mind and memory; that said will was executed as a result of undue influence by members of the Knights of Columbus; that decedent was 72 years of age and was suffering from leukemia, was enfeebled in body and mind, was easily influenced, and the Knights of Columbus members dominated his mind.

The Roman Catholic Bishop of Monterey-Fresno, as well as the Knights of Columbus and the pastor of St. John's Roman Catholic Church in Wasco, recipients under the will, and the executor of the estate each filed answers to the contest denying all the allegations in the contest.

On March 25, 1960, appellant dismissed her will contest without prejudice and the will was admitted to probate on March 30, 1960.

Appellant filed a demand for a share of the estate and notice of nonwaiver, in which she stated that she, as the daughter and only heir left surviving the decedent, is entitled to all the property left by decedent according to the laws of succession and that she does not waive any right that she has to inherit any property left by decedent, and demanded that the executor distribute all that part of the residue in excess of one-third thereof as provided for in section 41 of the Probate Code.

After due administration of the estate, the executor filed his first and final account and petition for distribution in which he set forth that appellant had filed a contest to the will; that

said will contest was dismissed with the appellant and executor agreeing that the assets of the estate were to be distributed substantially as follows: To appellant, the furniture and household effects valued at $150; $150 to the pastor for the masses; two-thirds of the estate to appellant; one-sixth to The Roman Catholic Bishop of Monterey-Fresno; and one-sixth to the Knights of Columbus. The account further set up all of the receipts and disbursements which left a balance for distribution of $4,303.31, of the total inventory of $5,122.32.

Both The Roman Catholic Bishop and the Knights of Columbus filed objections to the petition for distribution on the grounds that appellant had violated paragraph 11 of the decedent's will which reads as follows:

"I have intentionally omitted making provision for all of my heirs who are not specifically mentioned herein, and I hereby generally and specifically disinherit each, any and all persons whomsoever claiming to be or who may lawfully be determined to be my heirs at law except such as are mentioned in this Will, and if any such persons, or such heirs, or any devisees, or legatees, shall contest in any court any of the provisions of this instrument, or who shall not defend or assist in good faith in the defense of any and all of such contests, then each and all of such persons shall not be entitled to any devises, legacies or benefits under this will or any codicil hereto, and any and all devises, and legacies shall be paid, distributed and pass as though such person had died without issue of his or her body before my death or before becoming entitled to receive any portion of my estate."

Objectors had several alternative proposals based upon what the decision of the court would be on that problem.

After a hearing, the court found that appellant had filed a contest to the will and that by so doing she had violated the provisions of paragraph 11 of said will and forfeited all devises, legacies and benefits under said will; that there were no other persons in a position to avoid any gifts to a charitable or benevolent society in violation of Probate Code section 41; that the Knights of Columbus is not a charitable or benevolent society; and found, as well as ordered, the distribution of the estate as follows: Payment of the bequests for masses; one-half of the residue to The Roman Catholic Bishop; and the other one-half of the residue to the Knights of Columbus.

The appellant made a motion for a new trial, which was denied, and she filed her appeal from the order settling the first and final account and decree of distribution.

## Qualifications of Unincorporated Association to Take Under Will

■ An unincorporated association is qualified to take under a will whether the purpose is for charity or otherwise.

■ The court, on a hearing as to whether or not the Knights of Columbus was a charitable unincorporated association, found that the lodge was not engaged in charitable activities, on testimony that it was organized for insurance purposes and social activities; that it did not engage in any activity benefiting the community as a whole; that it never gave financial assistance, food or medicine to its members; that it did not engage in any educational activities; and it did not claim to be a charitable organization. The court quite properly found that the gift was not for charitable or benevolent purposes.

Appellant concedes in her opening brief that the gift to the Knights of Columbus under the will was not for charitable purposes and that the lodge is not a charitable organization and the gift is therefore void under section 27 of the Probate Code. However, in her closing brief she apparently takes the opposite and new position which we cannot consider. (*Estate of Sayegh*, 118 Cal.App.2d 327 [257 P.2d 995]; *Grayson* v. *Grayson*, 132 Cal.App.2d 471 [282 P.2d 565].)

Prior to the 1961 amendment, Probate Code section 27 read as follows: "A testamentary disposition may be made to the United States, to any instrumentality of the United States, to any of the United States, to any foreign state complying with the provisions of Chapter 3 (commencing at Section 259) of Division 2 of this code, to the State, to counties, to municipal corporations, to natural persons capable by law of taking the property, to unincorporated religious, benevolent or fraternal societies or associations or lodges or branches thereof, and to corporations *formed for religious, scientific, literary, or solely educational or hospital or sanatorium purposes, or primarily for the public preservation of forests and natural scenery, or to maintain public libraries, museums or art galleries, or for similar public purposes. No other corporation can take under a will, unless expressly authorized by statute.*" (As amended Stats. 1957, ch. 1785, p. 3177, § 1.) (Italics added.)

■ In 1961 the Legislature amended the section by deleting those words shown in italics above, and appellant thus claims that by striking out those words it indicates and implies that all unincorporated associations (until 1961) must be formed for religious, scientific, literary or educational pur-

poses. The actions of the 1961 Legislature cannot indicate the intent of earlier sessions of the Legislature.

Prior to the codification of the Probate Code in 1931, section 27 was formerly Civil Code section 1275. This section made no provision for testamentary disposition to unincorporated religious, benevolent or fraternal societies, associations or lodges, though there were some minor amendments prior to 1931 concerning scientific, literary or educational corporations. Upon codification of the Probate Code, section 27 was recast into its present basic form with the principal changes adding provision for disposition to unincorporated religious, benevolent and fraternal societies or associations or lodges or branches thereof and certain provisions authorizing disposition to corporations formed for religious or scientific, literary, etc. or for similar public purposes.

However, appellant fails to note Corporations Code section 21200 (1947) originally adopted in 1911 (ch. 572), which permits unincorporated societies, associations, lodges, etc. to ''purchase, receive, own, . . . real estate and other property as may be necessary for the business purposes and objects of the said society or association or lodge . . . subject to the laws and regulations of said society . . . and also to take and receive by will or deed all property not so necessary, and to hold the same until disposed of within a period of ten years from the acquisition thereof. . . .''

All of the cases which have been cited by appellant in her brief have been limited to gifts to associations for charitable purposes. (*Estate of Clippinger,* 75 Cal.App.2d 426 [171 P.2d 567], a home maintained by Eastern Star for elderly and dependent members; *Estate of Somerville,* 12 Cal.App.2d 430 [55 P.2d 597], dogs for blind persons; *Estate of Winchester,* 133 Cal. 271 [65 P. 475, 54 L.R.A. 281], natural history society; and *Estate of Irwin,* 196 Cal. 366 [237 P. 1074], tax exemption.)

Associations prevented from acquiring such property are discussed in *Grand Grove U.A.O.D.* v. *Garibaldi Grove No. 71,* 130 Cal. 116 [62 P. 486, 80 Am.St.Rep. 80] ; and *Kauffman* v. *Foster,* 3 Cal.App. 741 [86 P. 1108]. These cases, however, were decided in 1900 and 1906, respectively, being prior to the adoption of the act in 1911.

Probate Code section 27 originally had its history in Civil Code section 1275, as adopted in 1872, which provided that testamentary disposition can be made only to persons capable by law of taking, and to corporations expressly authorized by

statute to take. This was amended in 1873 to include certain scientific, literary and educational corporations; in 1903, to include hospital purposes; in 1905, municipal corporations; in 1923, corporations for the preservation of forests and scenery; in 1931, codification; and in 1951, allowing the United States to take (resulting from *Estate of Burnison*, 33 Cal.2d 638 [204 P.2d 330]).

Section 27 is not the only section in the law with regard to taking property by will. Corporations Code section 10206 sets forth the right of charitable corporations to take property by will; section 10007 covers the right of corporations sole to receive bequests; section 9501 sets forth the right of nonprofit corporations to take by will; section 10403 covers societies for the prevention of cruelty to children and animals taking by will; and section 802 covers general corporations' power to take by will.

It is our opinion that Probate Code section 27 defines, in addition to definitions elsewhere, who may take under a will, and has nothing to do with whether or not the recipient is a charity or otherwise.

Article 2 of division 1, chapter 1, of the Probate Code regulates gifts to charities. Section 40 states that all dispositions by will are subject to provisions of this Act limiting charitable bequests. Sections 41 and 43 state that no bequest can be made except as set forth therein covering the exemption of donors from restrictions on testamentary dispositions.

The parts of section 27 stricken by the 1961 amendment refer only to the word "corporations" and do not refer back to any of the other language. To refer it back to previous language would require that dispositions to the United States, to natural persons, and to associations can be made only if they are formed for religious, scientific, etc., purposes.

Due to the history of the law regarding bequests to unincorporated associations (Corp. Code, § 21200 and others), we do not think it was the intent of the Legislature to require that unincorporated associations can take under section 27 only if they are charitable.

In *Estate of Hurwitz*, 109 Cal.App.2d 302, at page 304 [240 P.2d 990], the court said that section 27 of the Probate Code was not mentioned in the *Estate of Bunn*, 33 Cal.2d 897 [206 P.2d 635], because section 27 has nothing to do with the question of validity of a bequest to a charity selected by another and that the section provides who may and who may not take under a will. The status of a corporation is immaterial as,

"A charitable gift may be made to a non-charitable institution so long as the purpose of the gift remains charitable." (*Estate of Henderson,* 17 Cal.2d 853, 859 [112 P.2d 605]; *Estate of Tarrant,* 38 Cal.2d 42, 47 [237 P.2d 505, 28 A.L.R.2d 419].) For example in the *Estate of Mealy,* 91 Cal.App.2d 371 [204 P.2d 971], the court found that the *Peoples Daily World* was a corporation under section 27 and was entitled to take even though it was not a charitable or benevolent society or corporation.

In *Estate of Anderson,* 179 Cal.App.2d 535, 538 [3 Cal.Rptr. 697], the court discusses section 27 and holds that this section was not to prevent or cure any evil; that it is purely enabling in character. The court discusses the right of corporations to take property. (Corp. Code, §§ 802, 9501, 10007 and 10206.)

In the light of the Corporations Code as it is today, it would appear that the Legislature in 1961 was merely modernizing section 27 and thus included all unincorporated associations, lodges, etc., and all corporations.

Under section 27, such associations and corporations may take property regardless of purpose. If such organization is not charitable it would pay an inheritance tax to take under a will, and this was fixed in the report of the Inheritance Tax Appraiser in this case in which the Knights of Columbus was allowed a $50 deduction and charged a tax at the rate of 10 per cent on the balance. If the organization could have qualified its bequest under section 41, it would of course not have been subject to tax but would have been limited as to the amount that it could have taken.

### Did Appellant Forfeit Her Right to Set Aside Gifts to Charity?

The no-contest clause as hereinabove quoted prevents the appellant from taking under the will, which in this case bequeathed to her certain personal property. The *Estate of Fuller,* 143 Cal.App.2d 820 [300 P.2d 342], covers fully will provisions with regard to forfeiture of a legacy or devise in the event of a contest.

In our case such provisions are valid and binding, are not against public policy and must be enforced as written. The agreement of the appellant to dismiss her contest of the will in consideration of the proposed petition requesting distribution to her of two-thirds of the estate was not sufficient to indicate good faith on her part, but indicates an attempt to settle the matter in her favor.

A petition for probate of a spurious will has been held not to be a contest where good faith is shown. (*Estate of Bergland,* 180 Cal. 629, 636 [182 P. 277, 5 A.L.R. 1363].)

The word "contest" in this type of a will forfeiture provision means any legal proceeding which is designed to thwart the testator's wishes as stated in his will. (*Estate of Howard,* 68 Cal.App.2d 9, 11 [155 P.2d 841].)

Section 428 of the Restatement, Property, states: "The commencement of a will contest, upon any of the grounds stated in Comment c, ['improper execution, undue influence, fraud or lack of testamentary capacity'] constitutes a violation of the restraint regardless of its subsequent withdrawal, whether that withdrawal takes place immediately after the commencement of the litigation, prior to hearing, at the trial, or thereafter, in the absence of specific language to the contrary."

Therefore, we find that the appellant, though dismissing her petition in view of an agreement with the executor, did actually contest the will and is not entitled to take under the will.

However, it is the appellant's position that the filing of the contest and the dismissal thereof do not prevent the appellant from taking under the law of succession as being one of the parties who has a right as an heir to take under section 43 of the Probate Code, there being no substitutional clause or residue clause. The respondents take the opposite position in stating that the filing of the contest, whether the same was dismissed or not, brings appellant under the provisions of the will in which the testator said that if there was such a contest "any and all *devises, and legacies shall be paid,* distributed and pass as though such person had died without issue of his or her body before my death or before becoming entitled to receive any portion of my estate." (Italics added.) Respondents believe that this action prevents the appellant from exerting her right under section 43 and thus, there being no substitutional legatee and no heir to take under section 43, that she has waived her right to so take. We do not agree with this position. Appellant is not taking the excess as a legatee or devisee, but by succession, and she did not give up a right to benefit by her contest.

Appellant did exercise her right to take under section 43 by an appropriate document filed in the estate. Said right is a personal right which can only be asserted by the member of the preferred class under the statute, is an inchoate thing

(*Estate of Bunn, supra,* 33 Cal.2d 897, 901), and said right is not available to her heirs or administrators. The matter is further discussed in *Estate of Hughes,* 202 Cal.App.2d 12, 18-19 [20 Cal.Rptr. 475].

Subsequent to the oral argument and with the consent of the court, the parties filed a written stipulation that the appellant has children who were the grandchildren of the decedent. Appellant is the only one who has a right under sections 41 and 43 and such grandchildren being of a different class have no right to object to charitable contributions.

To receive under sections 41 and 43 of the Probate Code by the heir of the proper class, there must be no substitutionary beneficiary. Where there is a substitutionary beneficiary, the person who has such right to exercise under section 43 may not recover even though the substitutional beneficiary may not object to the excess of one-third of the estate. (*Estate of Haines,* 76 Cal.App.2d 673 [173 P.2d 693].) This is the evasion formula. (4 Witkin, Summary of Cal. Law (7th ed. 1960) Wills and Probate, § 34, p. 3022.)

The validity of a charitable bequest in excess of one-third of the testator's estate may not be questioned except by those members of the class designated by Probate Code sections 41 and 43. (*Estate of Bunn, supra,* 33 Cal.2d 897, 900-901.)

In *Estate of Moore,* 190 Cal.App.2d 833, 838 [12 Cal. Rptr. 436], quoting from *Estate of Tarrant, supra,* 38 Cal.2d 42, 46, it is stated: " 'Courts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect if it can be done consistently with the rules of law. A bequest intended as a charity is not void, . . .' [Citations.] . . . It is the policy of the law to favor gifts for charitable purposes, and . . . such gifts will be liberally construed. . . .' "

A substitutional bequest of $10 to anyone claiming to be an heir and lawfully entitled to part of the estate has been held not to be a real substitutionary clause and as to the balance of the estate, the decedent died intestate. (*Estate of Munson,* 164 Cal.App.2d 146 [330 P.2d 302].) It is further stated in *Munson,* at page 150: "Property which is the subject of a voidable gift to charity, and not the subject of a substitutional gift in the event of such avoidance, must be distributed under the laws of succession to the relatives named in said section 41."

The appellant claims that as set forth in the *Estate of Fritze,* 85 Cal.App. 500 [259 P. 992], the testator evinces an intention to disinherit before the heir's right of succession can be cut off,

but the *Fritze* case holds, at page 505, that he must make a valid disposition of his property—not merely attempt to disinherit. In that case, the testatrix made an effort to cut out two of her three sisters by the will and the court distributed the residue to all three sisters under old Civil Code section 1313 (now Prob. Code, §§ 41 and 43).

In *Estate of Mathie*, 64 Cal.App.2d 767 [149 P.2d 485], the testator made a provision that any share to any devisee who contests the will shall become void. The court stated, at pages 779-780, ''Ineffectual legacies and devises pass into the residuum unless a contrary intention is shown by the will,'' and that therefore, there being no residuary legacy, the decedent died intestate as to the portion which the appellant would have received under the will, and that one-half of the estate should be distributed according to the laws of succession.

A ''residuary clause'' has been defined to be ''the clause in a will by which that part of the property is disposed of which remains after satisfying bequests and devises.'' (69 C.J. § 1472, p. 413; *Estate of Lefranc*, 38 Cal.2d 289, 295 [239 P.2d 617].)

In *Estate of Adams*, 164 Cal.App.2d 698, 701 [331 P.2d 149], it is held that while testamentary gifts to charity are valid if not objected to even though made within the 30-day or 6-month period, the gift may be voided at the instance of the heir of the designated class and if he fails to object, the gift passes to the charity; and at page 702, the court said, ''The purpose of section 41 is to protect the heirs named therein; and not to discriminate against charities by limiting their power to take.'' In our present case, we have an invalid bequest of one-half of the residue.

The respondents claim that the *Estate of Hayne*, 165 Cal. 568 [133 P. 277, Ann.Cas. 1915A 926], covers this situation. There, the testatrix had disinherited one of her sons. This case, however, is distinguishable from the case before us in that while in *Hayne* the testatrix did disinherit her son William in her will, one of her remaining sons, Arthur, died and thereafter she made a codicil to her will—actually copying her original will with some minor bequest changes—stating that she had made advances to this disinherited son and that is why she was continuing to disinherit him. The court held that while the amount originally advanced to William was greater than his share of the estate would be, nevertheless, Arthur, the deceased son, had died before she made the codicil and therefore under the codicil the estate was being distributed to all the

heirs excluding the disinherited son; and by these facts, William was still disinherited and would not take the share of the deceased son, Arthur, by the law of succession.

Therefore, while we find that the appellant cannot take under the provisions of the will by virtue of the no-contest clause, the testator cannot rewrite sections 41 and 43 of the Probate Code to prevent appellant from exercising her right to take as an heir of the proper designated class any excess over the amount allowed by those sections. Here, The Roman Catholic Bishop can take only one-third of the distributable estate (*Estate of Bauer,* 59 Cal.App.2d 152 [138 P.2d 717]) and by virtue of the objections filed by the appellant, she will be entitled to take the difference between one-third of the distributable estate and the one-half which was ordered distributed to The Roman Catholic Bishop.

The bequest as to masses is valid, having been made directly to the pastor of a designated church, and is not a bequest in trust or for charitable uses. (*Estate of Ward,* 125 Cal.App. 717, 722 [14 P.2d 91].) The pastor receives the money either as a gratuity or as compensation, there being no legal difference; he receives it for himself, so that there is no trust. (*Estate of Hamilton,* 181 Cal. 758, 765 [186 P. 587].)

For the reasons hereinabove stated, the decree of distribution insofar as it distributes to The Roman Catholic Bishop of Monterey-Fresno, a corporation sole, one-half of the rest, residue and remainder of the estate, is reversed, with directions to the trial court to amend its findings of fact and conclusions of law and to enter a modified decree in accordance with the views herein expressed. In all other respects, the decree is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied August 29, 1962.